**NO. 25-4200**

In The

# United States Court Of Appeals
# For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## JERMAINE DERRICK CARSON, JR.,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT ASHEVILLE**

---

### REPLY BRIEF OF APPELLANT

---

**John G. Baker**
FEDERAL PUBLIC DEFENDER FOR THE
   WESTERN DISTRICT OF NORTH CAROLINA

**Melissa S. Baldwin**
**Assistant Federal Public Defender**
**One Page Avenue, Suite 210**
**Asheville, NC 28801**
**(828) 232-9992**

*Counsel for Appellant*

## **Table of Contents**

Table of Authorities ................................................................................................ ii

Argument.................................................................................................................1

    I.    Corthell violated *Rodriguez* by pausing the suspended license investigation to investigate general criminal activity absent reasonable suspicion. ...........................................................................................1

      A.   Corthell acquiring reasonable suspicion after he added time to the stop by pursuing an unrelated investigation violates *Rodriguez*.........................1

      B.   Corthell's unreasonable seizure was not justified by Hayes' uncommunicated observations. ................................................................5

    II.   There was no reasonable suspicion to believe Carson was armed and dangerous. ...........................................................................................8

Conclusion ...........................................................................................................11

Certificate of Compliance ...................................................................................12

# Table of Authorities

Page(s)

Cases

*Kyllo v. United States*,
  533 U.S. 27 (2001) .................................................................................... 4

*Pennsylvania v. Mimms*,
  434 U.S. 106 (1977) .................................................................................. 7

Rodriguez v. United States,
  575 U.S 348 (2015). ........................................................................... 1, 4, 5

*Terry v. Ohio*,
  392 U.S. 1 (1968) ................................................................................ 4, 10

*United States v. Alston*,
  941 F.3d 132 (4th Cir. 2019) ..................................................................... 7

*United States v. Baker*,
  108 F.4th 1241 (10th Cir. 2024) ................................................................ 3

*United States v. Betts*,
  88 F.4th 769 (8th Cir. 2023) ...................................................................... 3

*United States v. Campbell*,
  26 F.4th 860 (11th Cir. 2022) .................................................................... 2

*United States v. Ferebee*,
  957 F.3d 406 (4th Cir. 2010) ..................................................................... 6

*United States v. Frazier*,
  30 F.4th 1165 (10th Cir. 2022) .................................................................. 2

*United States v. Gray*,
  491 F.3d 138 (4th Cir. 2007) ..................................................................... 4

*United States v. Hurtt*,
  31 F.4th 152 (3d Cir. 2022) ....................................................................... 3

ii

*United States v. Landeros,*
  913 F.3d 862 (9th Cir. 2019)................................................................ 7

*United States v. Massenburg,*
  654 F.3d 480 (4th Cir. 2011)............................................................... 5

*United States v. Miller,*
  54 F.4th 219 (4th Cir. 2022) .............................................................. 9

*United States v. Sakyi,*
  160 F.3d 164 (4th Cir. 1998)............................................................... 8

*United States v. Thomas,*
  955 F.2d 207 (4th Cir. 1992)............................................................... 6

*United States v. Whitley,*
  34 F.4th 522 (6th Cir. 2022) .............................................................. 3

Other Authorities

LaFave, Search & Seizure § 11.4(a) (6th ed. online) ............................... 7

iii

## Argument

I.   **Corthell violated *Rodriguez* by pausing the suspended license investigation to investigate general criminal activity absent reasonable suspicion.**

The government admits that Corthell "paus[ed] his citation-related activities" to discuss getting a narcotics detection dog without reasonable suspicion to do so. Gov't Br. at 12-13, & 34. This should end the matter because *Rodriguez* is violated when an officer adds time to a traffic stop by investigating ordinary criminal conduct absent independent reasonable suspicion to do so. Op. Br. at 31. The government resists this conclusion with two arguments: (1) unrelated investigations are only problematic if the officer fails to develop reasonable suspicion prior to the time the traffic violation should have been resolved and (2) Hayes' observations could be imputed to Corthell absent any communication between the two. Both are foreclosed by controlling precedent.

### A. Corthell acquiring reasonable suspicion after he added time to the stop by pursuing an unrelated investigation violates *Rodriguez.*

First, the government argues that so long as Corthell acquired reasonable suspicion before the time reasonably necessary to complete a suspended license investigation, his actions during the stop are irrelevant. Gov't Br. at 30, 34. The Court should reject this argument for three reasons: (1) the Supreme Court rejected it in *Rodriguez*, (2) it is inconsistent with this Court's jurisprudence and the

1

approach of at least four sister circuits, and (3) a seizure's reasonableness depends on both its duration and scope.

*Rodriguez* rejected the very argument the government advances here. In that case, the Supreme Court rejected looking at whether "the overall duration of the stop remains reasonable in relation to the duration of other traffic stops involving similar circumstances." 575 U.S. at 357. Whether a stop is reasonable or not is instead determined based "on what the police in fact d[id]." *Id.* So, it doesn't matter that Corthell had "additional tasks…requir[ing] well more than the 30 seconds Corthell took" to have the narcotics-detection-dog discussion. Gov't Br. at 34. What matters is that 30 seconds were added to the stop to further a drug investigation and whether Corthell had reasonable suspicion to support that unrelated investigation. *See generally United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022) ("Each minute that the trooper spent arranging the dog sniff was time the citation-related tasks went unaddressed. Consequently, his actions necessarily prolonged the stop."); *United States v. Campbell*, 26 F.4th 860, 885 (11th Cir. 2022) (en banc) (malfunctioning brake light stop extended by the 25 seconds the officer used to ask unrelated questions).

In the government's view a traffic stop is only extended when the "time required for completion of the traffic stop's mission" passes, Gov't Br. at 31, rather than when an officer adds time to the stop to pursue an unrelated investigation. The

government offers no post-*Rodriguez* authority for its standard. *See generally* Gov't Br. at 27-35.

The government's proposed extension point is inconsistent with the approach taken by at least four sister circuits, which require reasonable suspicion at the moment the officer engages in an investigative detour that adds time to the stop. *United States v. Baker*, 108 F.4th 1241, 1248 (10th Cir. 2024); *United States v. Betts*, 88 F.4th 769, 773 (8th Cir. 2023); *United States v. Whitley*, 34 F.4th 522, 531-32 (6th Cir. 2022); *United States v. Hurtt*, 31 F.4th 152, 159 (3d Cir. 2022). As the Third Circuit put it, "[courts] ask whether the mission of the traffic stop was continuously carried out before the discovery of evidence giving rise to a reasonable suspicion of criminality. Any break in that mission taints the stop because it is the result of an unreasonable delay." *Hurtt*, 31 F.4th at 159.

Under the government's view, an officer, during a traffic stop, can detain a person to pursue a suspicionless criminal investigation and then justify the detention based on information learned from that investigation. Take two suspects, both of whom were pulled over for speeding with the officer pausing the citation issuance to walk a drug-dog around the car with the dog alerting for one. The government's proposed standard would find only one unreasonable seizure—the one where the police intrusion uncovered no inculpatory evidence. But "the people's right to be free from unreasonable government intrusion 'has never been

3

tied to the measurement of the quality or quantity of information obtained.'" *United States v. Gray*, 491 F.3d 138, 144 (4th Cir. 2007) (quoting *Kyllo v. United States*, 533 U.S. 27, 37 (2001)).

The government's argument does not address the scope of Carson's seizure. But whether or not that seizure is reasonable turns on both "whether the officer's action was justified at its inception, *and* whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968) (emphasis added). Although Carson's seizure may have been justified as he was a passenger in an SUV stopped for a driver with a suspended license, the scope of that seizure was unreasonable. This is because Carson's seizure was justified to investigate the suspended license violation, *Rodriguez*, 575 U.S at 354, but it continued as Corthell pursued an unrelated investigation.

"The reasonableness of a seizure" is "based on what the police in fact do." *Id.* at 357. And—as the government admits—Corthell "pause[d]" the suspended license investigation to pursue a narcotics investigation, Gov't Br. at 12-13, 34, and it does not dispute that, at that moment, Corthell did not know facts supporting a reasonable suspicion. Carson was therefore unreasonably seized in violation of the Fourth Amendment. *See* Op. Br. at 29-38.

4

**B. Corthell's unreasonable seizure was not justified by Hayes' uncommunicated observations.**

The government also argues that Carson's seizure was reasonable because Hayes possessed probable cause to search the Highlander upon smelling marijuana and no communication was necessary for Corthell, or any other officer, to rely on Hayes' odor observation to seize the Highlander's occupants. Gov't Br. at 29-37. But there are two problems with this analysis. First, the government implicitly admits that this Court's collective-knowledge doctrine precludes imputing Hayes' marijuana odor detection to Corthell. And second, while Hayes *could have* searched the Highlander upon smelling marijuana, we know that he in fact did not do so and the police instead discovered the firearm after the stop was unlawfully extended.

The government concedes that this Court applies the collective-knowledge doctrine, which imputes information known by one officer to another officer, "when an officer acts on an instruction from another officer…." Gov't Br. at 36 (quoting *United States v. Massenburg*, 654 F.3d 480, 492 (4th Cir. 2011)). The government fails to identify any instruction from Hayes prior to Corthell's detour into a narcotics investigation, so Hayes' marijuana detection cannot be imputed to Corthell to supply the reasonable suspicion needed to avoid a *Rodriguez* violation. *See generally* Op. Br. at 39-40.

5

The government also argues that once Hayes developed probable cause that marijuana was present in the Highlander, he could have extended Carson's seizure for a narcotics investigation. Gov't Br. at 30-31, 35-37. But Hayes did not search the car or otherwise initiate any investigation upon smelling the marijuana. JA Vol. IV, Gov't Exh. 2, Ofc. Hayes BWC Footage (hereinafter Ofc. Hayes BWC) at 23:25:51-23:28:00. Instead, Hayes chitchatted with the driver about the Highlander's dashboard features and Now and Later candy. Ofc. Hayes BWC at 23:25:51-23:28:00. So, while Hayes *could have* detained Carson to search the Highlander upon smelling marijuana, he in fact did not.

When police violate the Fourth Amendment, the mere possibility that they could have obtained the evidence lawfully is not even sufficient to trigger the inevitable discovery doctrine. *See United States v. Thomas*, 955 F.2d 207, 209 (4th Cir. 1992) (prosecution must "establish by a preponderance of the evidence" that the challenged evidence "*would* have been discovered by lawful means" (emphasis added)). And, in any event, the government has never argued, either in the district court or on appeal, that the exclusionary rule's inevitable discovery doctrine applies, so that argument is waived. *See United States v. Ferebee*, 957 F.3d 406, 417 n.2 (4th Cir. 2010) (district court erred in relying on inevitable discovery

6

doctrine to deny a suppression motion, where the government failed to argue or offer evidence on its application).[1]

Corthell unconstitutionally extended Carson's seizure by detouring from the suspended license violation justifying that seizure to investigate unrelated ordinary criminal wrongdoing. The mere fact that Hayes had probable cause to launch an

---

[1] Although this Court should decline to address an inevitable discovery argument never advanced, that doctrine cannot apply on this record for three reasons. First, the district court found the government failed to present a clear timeline of events for the stop, JA492, which precludes the doctrine's requirement that it be based "on demonstrated facts" without any "speculative elements." *United States v. Alston*, 941 F.3d 132, 139 (4th Cir. 2019) (quotations omitted). Second, the challenged evidence here is a firearm found on Carson's person after he made an inculpatory admission. But applications of the doctrine "grounded in predictions about what persons other than the police would have done" are "[e]specially dubious…." *See* LaFave, Search & Seizure § 11.4(a) (6th ed. online). In some alternative sequence of events, Carson could have not made the admission prompting the firearm's discovery, better concealed the firearm on his person, or hidden the firearm in the Highlander. And third, Hayes' observations were enabled by Corthell performing unrelated queries on the Highlander's involvement in past crimes and the criminal history of its registered owner, who merely may have been a passenger. The government's argument that these were permissible, related officer safety measures should be rejected. *See* Gov't Br. at 32-33. The government articulates no reason why the Highlander being seen driving away from a five-year-old robbery or the like would make him any safer. *Compare Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977) (action purportedly for officer safety was approved after the government articulated legitimate concerns redressed by the measure). And the government's argument on these prompting officer safety is contradicted by the officer's own testimony and actions, which were that he "expedites" stops for his safety and he did not even ask for the passengers' names, JA193, JA199. *Compare United States v. Landeros*, 913 F.3d 862, 867-68 (9th Cir. 2019) (knowing passenger's name "would not have made the officers any safer" and was, if anything, "inversely related to officer safety" by prolonging their exposure to the motorists).

investigation does not render Corthell's actions constitutional. Because the government obtained the firearm by violating the Fourth Amendment, the motion to suppress should have been granted and the district court's order to the contrary should be reversed.

## II.   There was no reasonable suspicion to believe Carson was armed and dangerous.

As to Carson's protective frisk, the government argues it was constitutional for two reasons. First, the government was excused from having to show anything other than a marijuana odor in the Highlander Carson was a passenger in under *United States v. Sakyi*, 160 F.3d 164 (4th Cir. 1998), which presumes that probable cause to believe drugs are present in a vehicle automatically supplies reasonable suspicion to believe any occupant is armed and dangerous. Gov't Br. at 39-40, 44-45. And second, six facts known by the frisking officer, Escobedo, supplied reasonable suspicion to believe he was armed and dangerous. Gov't Br. at 40-44.

The six facts the government argues supply reasonable suspicion are: (1) police received a tip that armed drug dealers were in a complex parking lot where Carson was subsequently observed, (2) Carson had a prior violent conviction, (3) there was a marijuana odor in the car, (4) Carson appeared nervous, (5) Carson whispered in response to Esobdedo's firearm query, and (6) the stop occurred in a high-crime area. Gov't Br. at 40-41.

8

The Court should not consider factors 5 and 6—that Carson whispered a response and the stop occurred in a high-crime area. The whisper occurred *after* Escobedo physically touched Carson, JA Vol IV, Gov't Exh. 3, Det. Escobedo BWC at 23:28:58-23:28:09, so the frisk had already begun and this information cannot be used in the reasonable suspicion calculus. *Miller*, 54 F.4th at 228. And the assertion that the stop occurred in a "high-crime" area is not supported by the record.

As the government concedes, the district court's finding on the stop's character was only that "all officers testified during the hearing that the stop occurred in an area about which they had heightened safety concerns." Gov't Br. at 42 (quoting JA452-53). But this does not assist the government because the officers' testimony was that *bystanders* in that neighborhood presented a safety concern due to police hostility and a single instance of a bottle being thrown at one. JA 166-67, JA193. Carson wasn't a neighborhood bystander; he was a passenger in an SUV traveling through the neighborhood stopped for a traffic violation. And although there was testimony that the public housing complexes about a half mile away were high-crime areas, the stop did not occur in that high-crime area. Indeed, Corthell testified that he failed to perform the usual steps prior to pulling over the Highlander to ensure the stop did not occur in that high-crime

area. JA197, JA225. And, in any event, this Court should reject the officers' conclusory testimony on high-crime areas. *See* Op. Br. at 43-44.

The government's case for reasonable suspicion amounts to a vehicle with a marijuana odor, whose passenger with decade-plus old convictions for violent crimes was nervous when a swarm of armed officers stopped the car and whom Escobedo previously observed doing nothing wrong in a parking lot that police received unsubstantiated complaints about. "[A] reasonably prudent" person confronted with these facts would not believe that Carson threatened his safety." *Terry*, 392 U.S. at 27. Especially given that Asheville police routinely don't even bother charging marijuana possession and the armed officers outnumbered the occupants 2:1. *See* Op. Br. at 41-47.

To the extent the *Sakyi* presumption requires affirming Carson's frisk notwithstanding the totality of the circumstances failing to supply a reasonable suspicion that Carson was armed and dangerous, it should be revisited. *See* Op. Br. at 47-52. The government fails to defend its presumptive link between mere marijuana possession and firearms. *Compare* Op. Br. at 57-52 *with* Gov't Br. at 44-45. The government does not contend that guns often accompany marijuana users, only that marijuana users are breaking the law. But reasonable suspicion of a crime does not supply reasonable suspicion to believe someone is armed and dangerous.

10

## Conclusion

For the reasons stated in this brief and Carson's opening brief, this Court should reverse the district court's denial of Carson's motion to suppress and vacate his conviction.

Date: December 22, 2025

Respectfully submitted,

John G. Baker,
FEDERAL PUBLIC DEFENDER FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

/s/Melissa S. Baldwin
Melissa S. Baldwin
Assistant Federal Public Defender
One Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992
Melissa_Baldwin@fd.org
*Counsel for Appellant*

11

**Certificate of Compliance**

1. This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificate of counsel, addendum, attachments):

    This document contains 2,438 words.

2. This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Times New Roman.

Date: December 22, 2025

/s/Melissa S. Baldwin
Melissa S. Baldwin
Assistant Federal Public Defender
One Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992
Melissa_Baldwin@fd.org

12